**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re<br><br>**1098 BLUE HILL AVENUE, LLC**<br><br>Debtor | Chapter 11<br>Case No. 17-13836-FJB |

**MEMORANDUM OF DECISION ON**
**DEBTOR'S OBJECTION TO PROOF OF CLAIM OF BAY VIEW LOAN SERVICING LLC [POC 1-1]**

This chapter 11 case is before the Court on the objection of the debtor, 1098 Blue Hill Avenue, LLC (the "Debtor"), to the proof of claim filed in this case by Bayview Loan Servicing LLC, on behalf of its principal, Bayview Financial Trading Group, L.P. ("Bayview"). Bayview is the current holder of a first-position mortgage (the "Mortgage") on the Debtor's real property and of the promissory note it secures, in the original amount of $800,000. The proof of claim is in the total amount of $1,323,747.91 and includes the following items: $261,517.87 in "default interest," meaning interest over and above the ordinary interest for the applicable period; attorney's fees and costs of $42,494.04; and escrow advances of $162,640.70. The Debtor's objection to the proof of claim (the "Objection") states three grounds of objection: (i) the claim amount does not appear to reflect credits for some payments made on the loan that are evidenced by canceled checks and bank statements collected in Exhibit B to the Objection;[1] (ii) based on the payments in Exhibit B, the default interest component of the claim should not have been charged; and (iii) neither the escrow advances nor the attorney's fees and costs have been evidenced by substantiated documentation.

---

[1] Nowhere in the Objection does the debtor itemize or even total the payments in issue. The documents that comprise Exhibit B are submitted without authentication or explanation of what each is or purports to show. Also, nowhere in the Objection does the Debtor offer an explanation as to why the claim amount "appears not to reflect" credit for the payments. Why would the debtor expect the claim to be lower than it is?

After Bayview responded to the Objection, conceding no ground, the Court held a preliminary hearing, determined that there were contested issues of fact, and scheduled an evidentiary hearing. At the appointed date and time, the parties appeared only to request a continuance of the evidentiary hearing to another date, which continuance the Court granted. At the evidentiary hearing, a very minimalist affair, the Debtor offered and the Court admitted three exhibits (Exhibits 1 through 3), and Bayview offered and the court admitted nine (Exhibits A through I), including an itemized accounting of every transaction over the history of the mortgage loan. In addition, only two witnesses were called, both by the Debtor: a Bayview bank officer named Terrence Schoenleber, and the Debtor's expert witness, accountant Bruce Weinstein. Bayview cross-examined the Debtor's witnesses.

The parties then submitted proposed findings and conclusions. The Debtor's include no finding or conclusion concerning the third of the three bases of objection itemized above, concerning escrow advances and attorney's fees.  The Debtor's *do* seek proposed findings (at paragraphs 1-5) in support of three *new* challenges to the default interest component of the claim, challenges not articulated in advance of the evidentiary hearing or even in the opening statement made by Debtor's counsel at the evidentiary hearing. Specifically, the Debtor now further argues that the inclusion of default interest is inappropriate because (i) under the loan, default interest may be assessed only after a declaration of default, but there is no evidence that Bayview ever made such a declaration; (ii) under a 2007 forbearance agreement between the parties, Bayview agreed to waive accrued default interest; and (iii) by virtue of a 2009 loan modification agreement between the parties, the loan no longer includes a provision permitting the assessment of default interest.

The following constitute the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, made applicable hereto by Fed. R. Bankr. P. 7052 and 9014(b).

**Burdens**

"A proof of claim executed and filed in accordance with [the Federal Rules of Bankruptcy Procedure] constitutes prima facie evidence of the validity and amount of the claim." Fed. R. Bank. P. 3001(f); *see also In re Long,* 353 B.R. 1, 13 (Bankr. D. Mass. 2006). A party objecting to a properly executed and filed proof of claim bears the initial burden of adducing "substantial evidence" to refute its prima facie validity. *In re Hemingway Transp., Inc.*, 993 F.2d 915, 925 (1st Cir. 1993) ("The interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by substantial evidence."); *In re Long,* 353 B.R. at 13, *citing United States v. Clifford (In re Clifford)*, 255 B.R. 258, 262 (D. Mass. 2000). "It is often said that the objector must produce evidence equal in force to the prima facie case." *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir.1992). If, and only if, the objecting party manages the initial burden of producing substantial evidence, the ultimate risk of nonpersuasion as to the allowability of the claim shifts to the party asserting the claim. *Hemingway Transp., Inc.*, 993 F.2d at 925 (1st Cir. 1993); *In re Long*, 353 B.R. at 13.

**Application of Payments**

The Debtor's first basis of objection to the proof of claim is that the claim amount does not appear to reflect credits for those payments made on the loan that are evidenced by canceled checks and bank statements collected in Exhibit B to the Objection. Although the Debtor has nowhere offered an itemization of the credits in issue, the Debtor is referring to the payments evidenced by attachments to the Objection. By the Court's tally, there are 19 such payments totaling $138,500, made from December 31, 2015, through September 5, 2017; all but four are in the amount of $7,000; one is for $8,000, and three are for $8,500.[2]

---

[2] In its Proposed Finding and Conclusions, the Debtor seeks a conclusion that Bayview has not applied payments totaling only $113,247.27. Nowhere does the Debtor specify which of the $138,500 in payments that are evidenced by attachments to the Objection comprise the $113,247.27. The Debtor appears to be unaware of the discrepancy.

3

The Debtor does not contend that the proof of claim was not executed and filed in accordance with the Federal Rules of Bankruptcy Procedure. I find that it was properly filed and executed. It therefore constitutes prima facie evidence of the validity and amount of the claim. The first issue then is whether, by this objection and the evidence adduced to support it, the Debtor has overcome that prima facie validity and thereby shifted the burden to the claimant.

It is not clear why the Debtor believes that the claim amount does not appear to reflect the credits. In the Objection the Debtor states, maybe by way of explanation, that the proof of claim "indicates pre-petition arrears of $442,782.70, apparently alleging that no payments were made from April 1, 2014 through October 1, 2017, the month this case was filed." The proof of claim does state that the amount necessary to cure the default as of the date of the bankruptcy filing was $442,782.78. However, it in no way follows, and the proof of claim does not allege, that no payments were made from April 1, 2014 through October 1, 2017. Rather, Bayview's proof of claim implicitly alleges—as any bankruptcy professional would surely understand—that after all payments to date have been credited and applied to monthly installments in the order in which they came due, the Debtor remains in default by $442,727.78, which represents some 43 monthly payments [itemized at the second page of Exhibit A to the proof of claim], with the oldest being the payment due for April 1, 2014. The Debtor does not deny this and offers no reason or evidence to doubt it. Accordingly, I conclude that this particular objection fails for lack of substantial evidence to support it. It does not overcome the prima facie validity of the proof of claim.

Even if this objection were so constituted and supported as to rebut the prima facie validity, the evidence preponderates in support of the conclusion that the payments in issue were received and properly credited in the calculation of the claim amount. The evidence on the issue consists of a loan history (the "Loan History") that Bayview provided to the Debtor in response to this objection; it was submitted into evidence by the Debtor as its Exhibit 3. The Loan History is a 20-

page, line-by-line itemized history of every debit and credit to the loan balance since its inception in 2004. The Debtor, having itself submitted this evidence, takes no issue with its accuracy.

The Debtor's expert, Bruce Weinstein, criticized the Loan History as "not consumer friendly," and in this he is correct. The expert, however, is not a consumer but purports to be an expert in accounting for mortgage loan balances. Though documents of this genre can be cryptic, this one is not and should be well within the expert's competence. Mr. Weinstein's testified that the Loan History failed to account for some $113,000 in payments as adjustments to principal. He did not specify which payments comprised the $113,000 of which he was speaking. Much less did he indicate why the payments should have been applied exclusively to principal. He supplied no substitute accounting of his own. I find that either Mr. Weinstein is not the expert in this subject matter that he purports to be, or his testimony is disingenuous. His testimony was of no use to the Court whatsoever.

Each of the nineteen payments in issue is accounted for in the Loan History. Each payment was in an amount less than was necessary to pay in full the next monthly installment. Accordingly, the first payment, received and credited on January 5, 2016, in the amount of $8,000, was less than the $9,277 that would be necessary to pay in full the oldest unpaid monthly payment, the payment that had come due on April 1, 2013. Because it could not fully abate a monthly payment, it was credited to an account labeled simply as "unapplied" ("Unapplied")—essentially a suspense account—bringing the total in that account to $8,000. The second payment, this time in the amount of $7,000, also was less than the $9,277 needed to make the payment due April 1, 2013, and so it too was credited upon its receipt to Unapplied, bringing the Unapplied balance to $15,000. Within a few days thereafter, Bayview debited the Unapplied account by $9,277 and credited the same amount in satisfaction of the payment that was due April 1, 2013. It was applied as follows: $1,590.55 to principal (reducing the principal balance from $749,191.17 to

5

$747,500.52), $2,580.56 to interest, and $5,105.90 to escrow (reducing the escrow balance to $131,609.18). The Debtor has offered no challenge to the propriety of this allocation—or of the allocation of any application of Unapplied funds in abatement of any monthly payment obligation.

  The third payment was another payment of $7,000. Upon its receipt, it was combined with $2,277 from Unapplied and together these were credited in satisfaction of the $9,277 payment that had come due on May 1, 2013. Likewise, upon receipt of the fourth payment, also of $7,000, it was combined with another $2,277 from Unapplied (reducing the Unapplied balance to $1,169), and together these were credited in satisfaction of the $9,277 payment that had come due on June 1, 2013. The fifth payment, also of $7,000, was simply credited to Unapplied, which increased its balance to $8,169, not enough to fully pay another monthly installment. Upon receipt of the sixth payment, Bayview credited it to Unapplied, increasing its balance to $15,169, and one week later applied $9,277 from Unapplied in satisfaction of the payment that had come due on July 1, 2013. In like manner, the seventh through fifteenth payments were applied in satisfaction of payments that had come due on the first days of each month from August 2013 through March 2014. Thereafter, from May through September 2017, the Debtor made four further payments, totaling $32,500, each of which was credited to Unapplied, increasing its balance to $40,973.36.  Though this total was enough to abate at least three, probably four, further monthly installments, Bayview did not apply the Unapplied balance to another monthly payment until after the Debtor's bankruptcy filing. Accordingly, as of the date of the bankruptcy filing, which was on October 17, 2017, the Loan History reflects a loan principal balance of $729,239.56. This is exactly the same amount as Bayview used as the principal balance in the calculation of the amount of its claim, as shown in the itemization attached to the Proof of Claim. Moreover, the calculation of the claim amount also includes a credit for the $40,973.36 that remained in Unapplied on the petition date, and it thus duly reflects a credit even for the payments that funded that Unapplied balance. In

6

short, for purposes of calculation of the claim amount, even the Unapplied balance was applied. The loan history thus reflects full credit for each of the payments in issue. Accordingly, the objection questioning the application of payments is overruled.

**Default Interest**

The Debtor's second basis of objection is that, based on the payments in Exhibit B, the default interest component of the claim should not have been charged. The Debtor appears to contend that had the payments evidenced in Exhibit B been properly credited, there would have been no default to give rise to default interest. Having found that the payments in question were fully credited, I must on that basis overrule this objection, too.

I note moreover that even without evidence of the application of the payments in question, this argument could not possibly give rise to a valid objection. The Loan History shows that, when the first of the payments in issue was made, the loan was thirty-three months in arrears. There were nineteen contested payments, not one of which was sufficient by itself to fully pay a single monthly installment. The nineteen payments were insufficient even for the Debtor to remain current with those monthly installments that came due after the Debtor commenced making the payments,[3] much less to enable the Debtor to dig itself out of the thirty-three month hole it was already in. Notwithstanding the payments in issue, the Debtor was at all relevant times in deep default, and this basis of objection articulates no valid challenge to the default interest component of the claim.

---

[3] Notwithstanding these payments, the Debtor fell considerably further in arrears during the period in which the Debtor was making the payments.

**Other Objection to Default Interest**

In its proposed findings and conclusions, the Debtor asserts for the first time three further objections to the default interest component of Bayview's claim: the inclusion of default interest is inappropriate, the Debtor argues, because (i) under the loan, default interest may be assessed only after a declaration of default, but there is no evidence that Bayview ever made such a declaration; (ii) under a 2007 forbearance agreement between the parties, Bayview agreed to waive accrued default interest; and (iii) by virtue of a 2009 loan modification agreement between the parties, the loan no longer includes a provision permitting the assessment of default interest. These grounds were not asserted in the Debtor's Objection, which is the document that established the particular grounds of objection that the claimant needed to address at the evidentiary hearing. In fact, at one of the preliminary hearings on this Objection, Debtor's counsel emphasized that its objection was entirely a matter of mathematics and accounting. It would be patently unfair to permit the Debtor to raise these objections now, and to evaluate Bayview's evidence as if it had been intended to address them. The new arguments are irrelevant to the merits of the objections that the Debtor did articulate.

**Escrow Advances and Attorney's Fees and Costs**

The third basis of objection that the Debtor did articulate in its proof of claim is that neither the escrow advances nor the attorney's fees and costs have been evidenced by substantiated documentation. At the hearing, Bayview adduced itemizations of the attorney's fee and escrow components of its claim, and the Loan History includes further evidence of these items. In its proposed findings and conclusions, the Debtor seeks no finding or conclusion regarding this basis of objection. Accordingly, I deem this basis of objection waived.

**Conclusion**

      For the reasons set forth above, a separate order will enter overruling the Objection and allowing the claim in the amount asserted.

Date:  March 5, 2020                          _____
                                              Frank J. Bailey
                                              United States Bankruptcy Judge